**AZBY BROKERAGE, INC. d/b/a Shellbank Brokerage of Brooklyn, Inc., and Har–Lem Brokerage, Inc. on behalf of themselves and all other insurance brokers similarly situated, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

No. 85 Civ. 3594 (RJW).

United States District Court, S.D. New York.

March 16, 1988.

Weg and Myers, P.C., New York City, for plaintiffs; Frank A. Weg, Ira M. Myers, Dennis T. D'Antonio, Jonathan A. Murphy, of counsel.

Cahill Gordon & Reindel, New York City, for defendant; Charles Platto, Kevin Burke, Jacqueline McCarthy, William Jacobson, Thomas McCaffrey, Seth Goodchild, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Defendant Allstate Insurance Company ("Allstate") has moved pursuant to Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the complaint. For the reasons that follow, defendant's motion is granted in part and denied in part.

## BACKGROUND

The instant action was stayed by this Court on the ground of primary jurisdiction, *see Azby Brokerage, Inc. v. Allstate Insurance Co.,* 637 F.Supp. 382 (S.D.N.Y. 1986), and placed on the Court's suspense docket pending presentation to the appropriate state administrative tribunals. Following a year and one half of state proceedings, the case has been restored to the Court's active docket. In addition to the original motion to dismiss for failure to state a claim, defendant now asserts as a ground of dismissal plaintiffs' failure to make a good faith effort to pursue their administrative remedies. Defendant further asks the Court to defer to the findings of the New York Automobile Insurance Plan ("NYAIP" or "the Plan"), arrived at after an informal hearing by the Plan's Appeals Subcommittee.

Plaintiffs Azby Brokerage, Inc. ("Azby"), Shellbank Brokerage, Inc. ("Shellbank"), and Har-lem Brokerage, Inc. ("Har-lem") are insurance brokers licensed to do business in New York.[1] In this action, they purport to represent themselves and all brokers similarly situated. Defendant is an Illinois corporation with its principal place of business in that state. This action arises out of the parties' participation in the NYAIP. Rather than recite the facts at length, the Court assumes familiarity with the facts set out in its prior opinion. *Id.* at 383–84.

Briefly, plaintiffs allege that defendant has "maliciously 'pirate[d]' away" high risk automobile insurance accounts and commissions and assigned them to Allstate-affiliated brokers, in some cases without the consent of the insured. Complaint at 4. Based on these allegations, plaintiffs assert against defendant claims of *prima facie* tort, intentional interference with contractual relations, and deceptive acts and practices in the conduct of a business under section 349(h) of the New York General Business Law (McKinney Supp.1988).

Since the action was placed on the suspense docket in April, 1986, plaintiffs have sought administrative review in three fo-

---

1. Har-lem ... was at one time operated by Steven Taracido, its sublicensee at the time of this action's inception. Subsequent to the commencement of this litigation, ... [Taracido] sold Har-lem's entire book of business to one Julio Boria, d/b/a "J.O.B. Brokerage." ... Har-lem ... is now only a defunct corporate shell.
Letter of Jonathan A. Murphy, attorney for plaintiffs (Mar. 14, 1988).

rums, beginning with the NYAIP. Although the agency conceded that it had no right of review over the matter,[2] it agreed to review plaintiffs' claims because they were a "subject of concern to the Plan." Letter of Martin J. Hertz, counsel for NYAIP, to Ira M. Myers, attorney for plaintiffs (May 7, 1986). The investigatory-type hearing before the Appeals Subcommittee of NYAIP was limited, with no witnesses allowed. Plaintiffs submitted factual summaries with exhibits demonstrating six instances of alleged abuse, and defendant submitted an opposing memorandum and affidavits. Counsel for both parties presented argument and answered questions. Following the hearing, the Governing Committee rendered a one-page report, based on the recommendation of the Subcommittee, stating that the evidence presented "failed to demonstrate a basis for any action against Allstate." Report of the Governing Committee of the NYAIP (Apr. 29, 1987).

Plaintiffs' request for review of the NYAIP determination by the Superintendent of Insurance was denied for lack of standing. Their Article 78 petition in Supreme Court, New York County, was denied on the same ground. According to the state court, the NYAIP took no action subject to review under Article 78 of the CPLR. The NYAIP did not fail to perform a duty or proceed in excess of its jurisdiction. "The decision of the PLAN was not reached after a judicial type hearing and the applicable statutes did not require a review of any sort." *Azby Brokerage, Inc. v. Corcoran,* Index No. 21024-87, at 3 (N.Y.Sup.Ct.N.Y.Co. Sept. 22, 1987) (citing CPLR § 7803 (McKinney 1981)).

## DISCUSSION

This Court's role on a motion to dismiss for failure to state a claim is a limited one: it must accept plaintiffs' well-pleaded alle-

gations at face value, *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), construe the allegations in the complaint in plaintiffs' favor, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).

### A. *Administrative Tribunal Claims*

As grounds for dismissal, defendant claims on the one hand that plaintiffs made a halfhearted attempt at review by state agencies, and on the other, that this Court should defer to the NYAIP's findings in favor of Allstate. Defendant does not set forth the legal theories upon which these contentions are based,[3] but in any event, the record does not support either of them.

In the Court's view, plaintiffs have pursued all administrative remedies reasonably available to them. Contrary to defendant's implication, exhaustion of administrative remedies is not a prerequisite for review by the district court. As the Court stated earlier, "where the agency action being challenged is plainly beyond the agency's jurisdiction, or where the administrative remedies available are plainly inadequate," exhaustion is not required. *Azby Brokerage, Inc., supra,* 637 F.Supp. at 385 (citations omitted).

Plaintiffs have encountered several obstacles in the past year and one half. Although the NYAIP, as the agency charged with overseeing this area of the insurance business, gave a limited, informal hearing to plaintiffs' claims, neither the agency, nor the Superintendent of Insurance, nor the Article 78 Court had statutory jurisdiction over the matter.[4] Given the lack of juris-

**2.** See *infra,* note 4.

**3.** Defendant appears to be asserting alternative legal theories for dismissal: plaintiffs' failure to prosecute before the administrative agency, or, in the alternative, the application of res judicata to the agency's findings.

**4.** Section 19 of the NYAIP rules, entitled "Right of Review and Appeal," permits only the applicant for insurance, an insured, or an insurer to seek review of the Plan Committee and to appeal the decision to the Superintendent of Insurance. *See* N.Y.Ins.Law § 5304(a) (McKinney 1985). The rules do not grant to brokers ("pro-

diction and the circumscribed quality of review, plaintiffs' administrative remedies have proved to be inadequate. Indeed, the only guidance provided by the administrative tribunals was the Article 78 Court's statement that plaintiffs "now have an opportunity to fully litigate this question in federal court." *Azby Brokerage, Inc. v. Corcoran, supra,* at 3. That plaintiffs might have pursued their administrative remedies with more vigor is not sufficient basis for dismissal. The procedural history of this case indicates that greater alacrity would only have led to the same, albeit earlier, disposition in this Court. At the very least, plaintiffs have demonstrated that this matter cannot be resolved effectively at the agency level. The Court therefore rejects defendant's contention that plaintiffs failed to pursue their administrative remedies in good faith.

■ As a second basis for dismissal, defendant asks the Court to give great weight to the NYAIP's findings in Allstate's favor. In fact, defendant contends that the findings are so conclusive that they require the Court to sanction plaintiffs under Rule 11, Fed.R.Civ.Pro., for pursuing "frivolous and unfounded litigation." *Carto v. Buckley,* 649 F.Supp. 502, 511 (S.D.N.Y.1986). Essentially, Allstate urges the Court to dismiss the complaint and to impose sanctions based solely on the NYAIP's cursory review of plaintiff's claims. Under the circumstances, it would not be fair for this Court to accord the agency's findings what amounts to res judicata effect.

The Supreme Court has stated that it is appropriate to apply res judicata to administrative decisions "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining*

*Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Clearly that standard has not been met in the instant case. "An action taken by an administrative agency ... is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Delamater v. Schweiker,* 721 F.2d 50, 53 (2d Cir.1983) (citing Restatement (Second) of Judgments § 83 (1982)). See also 4 K. Davis, Administrative Law, § 21.3 at 52 (1983 ed.) (res judicata applies to informal administrative determinations when procedures employed by the agency resemble those of a trial court). The NYAIP did not make an adjudicative determination; indeed, the agency conceded at the outset that it had no authority to adjudicate the matter. At the hearing, there was no testimony, no cross-examination, a minimum of evidence, and limited argument. Furthermore, the findings were not reviewable by the Superintendent or in an Article 78 proceeding. The Court finds that the procedure followed by the NYAIP falls far below the standard articulated in *Utah Construction & Mining Co., supra,* and declines to give res judicata effect to the agency's superficial and inconclusive findings. For the same reasons, the Court denies defendant's motion for Rule 11 sanctions. Accordingly, plaintiffs are entitled to a full adjudicatory proceeding in this Court.

### B. *Prima Facie Tort Claim*

■ To state a claim for *prima facie* tort, plaintiffs must allege that defendant inflicted intentional harm by an act or series of acts otherwise lawful, without excuse or justification, and that defendant's action resulted in damages. *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1440 (S.D.N.Y.1986); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 342, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467 (1983). The complaint

ducers") a right of review or appeal as to any subject. Thus, the NYAIP agreed to hear plaintiffs' claims not pursuant to any statutory jurisdiction, but merely as an investigation into the need for procedural changes in NYAIP administration. Similarly, the Superintendent of Insur-

ance had no statutory authority to review the NYAIP's findings and declined to do so. Finally, the NYAIP hearing did not raise any question reviewable in an Article 78 proceeding pursuant to CPLR § 7803 (McKinney 1981).

must allege in addition that defendant was motivated solely by a malicious intention to injure plaintiffs. "[M]otives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence, even if mixed with malice or personal animus, bars recovery under *prima facie* tort." *Rodgers v. Grow–Kiewit Corp.–MK,* 535 F.Supp. 814, 816 (S.D.N.Y.) (citation omitted), *aff'd,* 714 F.2d 116 (2d Cir.1982). *See also, Squire Records, Inc. v. Vanguard Recording Society, Inc.,* 25 A.D.2d 190, 191–92, 268 N.Y.S.2d 251, 253–54 (1st Dep't 1966), *aff'd,* 19 N.Y.2d 797, 279 N.Y.S.2d 737, 226 N.E.2d 542 (1967). Finally, to plead a claim for *prima facie* tort, plaintiffs must allege special damages. *El Greco Leather Products Co. v. Shoe World, Inc.,* 623 F.Supp. 1038, 1045 (E.D.N.Y.1985); *ATI, Inc. v. Ruder & Finn, Inc.,* 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 866, 368 N.E.2d 1230, 1232 (1977). Round sums without any attempt at itemization are not sufficient allegations of special damages. *El Greco Leather Products Co.,* 623 F.Supp. at 1045 (citing *Leather Development Corp. v. Dun & Bradstreet, Inc.,* 15 A.D.2d 761, 224 N.Y.S.2d 513, 514 (1st Dep't 1962), *aff'd,* 12 N.Y.2d 909, 237 N.Y.S.2d 1007, 188 N.E.2d 270 (1963)).

■ In this action, plaintiffs assert that defendant "pirate[d] away" high-risk automobile accounts so as to decrease plaintiffs' commissions and increase the commissions of Allstate-affiliated brokers. Thus, the alleged injury is the result of business-motivated actions, not the result of a malicious intention solely to harm plaintiffs. Moreover, plaintiffs do not assert special damages, but instead, lost commissions in the amount of "at least ten million dollars." Complaint at 8. Such a general damage claim is not stated with enough particularity to constitute an adequate pleading of special damages as required under New York law. *Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 554 F.Supp. 838, 849–50 (S.D.N.Y.1982), *aff'd,* 724 F.2d 290

(2d Cir.1983), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

While the Court acknowledges that a *prima facie* tort may be pleaded alternatively with traditional torts, *National Nutritional Foods Association v. Whelan,* 492 F.Supp. 374, 383 (S.D.N.Y.1980), the instant complaint lacks the requisite elements to state a claim. The Court therefore dismisses plaintiffs' *prima facie* tort claim.

### C. *Intentional Interference with Contract Claim*

■ In order to state a claim for intentional interference with contract, the complaint must allege "the existence of a valid contract of which defendant has knowledge; the defendant's intentional procuring of a breach of that contract; and damages." *Demalco Ltd. v. Feltner,* 588 F.Supp. 1277, 1280 (S.D.N.Y.1984); *see also Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5 (1956).

The Court finds that plaintiffs have stated a claim for intentional interference with contract. Even if plaintiffs have pleaded the facts in a sketchy manner, without specifying the contract terms or the precise nature of the breach, "[t]hese deficiencies do not lend a fatal blow to plaintiff[s'] complaint." *Crimpers Promotions, Inc., supra,* 554 F.Supp. at 850. A "short and plain statement of the claim" is all that is required. Fed.R.Civ.P. 8(a)(2). The complaint is sufficient to give defendant fair notice of the claim and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

Plaintiffs set forth adequate facts from which the Court could find that valid contracts existed of which defendant had knowledge and with which defendant intentionally interfered. The Court therefore denies defendant's motion to dismiss plaintiffs' intentional interference with contract claim.[5]

---

**5.** The Court notes that the statute of limitations for intentional interference with contract is three years from the time of the breach of the contract. *Kartiganer Associates, P.C. v. Town of New Windsor,* 108 A.D.2d 898, 899, 485 N.Y.S.2d 782, 784 (2d Dep't 1985); CPLR § 214(4). Following the completion of discovery, the Court is prepared to dismiss any claims that are barred by the statute of limitations.

## D. *Deceptive Acts and Practices Claim*

■ Plaintiffs' third claim alleges a violation of New York General Business Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y.Gen.Bus.Law § 349(a) (McKinney Supp.1988). The law was enacted by the state legislature in 1970 in order to give consumers "the right to an honest market place where trust prevails between buyer and seller." 1970 N.Y.Laws 3074 (Governor's Memorandum). Its purpose, as indicated by the title, "Consumer Protection from Deceptive Acts and Practices," was to remedy injury to consumers. In 1980, the law was expanded to grant a right of action, not only to the attorney general, but also to the individual to "bring an action in his own name" against consumer fraud. N.Y.Gen.Bus.Law § 349(h) (McKinney Supp.1988).

The consumer orientation of section 349 was noted in *Genesco Entertainment, A Division of Lymutt Industries, Inc. v. Koch*, 593 F.Supp. 743 (S.D.N.Y.1984):

> The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising. The consumer oriented nature of the statute is evidenced by the [modest scope of the] remedies it provides.

*Id.* at 751 (footnote omitted); *accord, Morris v. Gilbert*, 649 F.Supp. 1491, 1496–97 (E.D.N.Y.1986).

The Court reserves decision on dismissal of plaintiffs' punitive damages claim, pending completion of discovery. Punitive damages are an extraordinary remedy which is "allowed only where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961). Dismissal of punitive damages at this juncture would be premature.

**6.** The types of actions that fall within the scope of § 349 concern consumer fraud. *See e.g., Morris v. Gilbert*, 649 F.Supp. 1491 (E.D.N.Y. 1986) (purchase of securities induced by misrepresentations of brokerage company salesman was not a consumer transaction under § 349);

The *Genesco* Court relied on the Federal Trade Commission Act, 15 U.S.C. § 45 (1982 & Supp. IV 1986) in interpreting the phrase "deceptive practices." The federal act, on which section 349 is modeled, "only prohibits those deceptive practices which affect the public interest." *Genesco Entertainment, A Division of Lymutt Industries Inc., supra*, 593 F.Supp. at 752. *See also People v. Colorado State Christian College*, 76 Misc.2d 50, 54–56, 346 N.Y.S.2d 482, 487–89 (Sup.Ct.N.Y.Co.) (discussing legislative history of § 349).

As pleaded, the acts alleged in the instant complaint are not the types of transactions that fall within the scope of the statute.[6] Plaintiffs do not assert injury to consumers or to the public interest, but to a class of independent insurance brokers. The "deceptive acts" complained of—"pirating away" high-risk automobile insurance accounts from plaintiffs—may benefit, harm, or have no effect on the holders of the insurance policies. Indeed, the only injury alleged is the loss of plaintiff insurance brokers' commissions. Under the facts presented, consumers have not been harmed and the public interest has not been implicated. Therefore, the Court concludes that plaintiffs' claim is not cognizable under section 349 of the New York General Business Law.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted with respect to the claims of *prima facie* tort and deceptive acts and practices under the New York General Business Law § 349(h). In addi-

*People v. British & American Casualty Co.*, 135 Misc.2d 352, 505 N.Y.S.2d 759 (Sup.Ct.N.Y.Co. 1986) (deceptive letters by insurance company to dentists were "dishonest and misleading" within the meaning of § 349 and were enjoined). While the statute does not preclude an action by one business against another, the gravamen of the complaint must be consumer injury or harm to the public interest. *See e.g., Sulner v. General Accident Fire and Life Assurance Corporation, Ltd.*, 122 Misc.2d 597, 471 N.Y.S.2d 794 (Sup.Ct.N.Y.Co.1984) (policyholders stated a series of deceptive acts in connection with insurance company's disclaimer of liability for damage to insured business premises).

tion, Har-lem's remaining claim is dismissed for lack of standing. Defendant's motion is denied with respect to Azby's and Shellbank's claim of intentional interference with contract and with respect to Rule 11 sanctions. The Court acknowledges that Azby and Shellbank have pursued all administrative remedies reasonably available to them in accordance with the Court's earlier order, and declines to accept the findings of the NYAIP as dispositive of the matter. The parties are directed to complete discovery by June 17, 1988 and file a joint pretrial order by July 22, 1988.

It is so ordered.